UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARLENE GOLDEN, et al., | : | Civil No. 3:18-CV-02425 |
| Plaintiffs, | : | |
| v. | : | (Magistrate Judge Saporito) |
| BRETHREN MUTUAL INSURANCE COMPANY, | : | |
| Defendant. | : | |

## MEMORANDUM

This matter is before the court on the defendant's motion for a protective order. (Doc. 15). The defendant seeks to preclude the plaintiffs from using a February 28, 2018 email exchange between a representative of the defendant and plaintiffs' counsel and the information contained within it. The motion asks the court to award defendant counsel fees for preparing and filing its motion and brief. For the reasons set forth herein, we will grant the motion in part and deny it in part.

### I. *Statement of Facts*

This case arises out of an automobile accident which occurred on December 21, 2016. The plaintiffs are making claims for breach of contract pursuant to the underinsured motorist benefits coverage in the

policy of insurance issued by the defendant, and statutory bad faith under 42 Pa. Cons. Stat. Ann. § 8371. (Doc. 1). The motion alleges that before the filing of the complaint, the plaintiffs and their counsel were in contact with Valerie Everline, the defendant's claims adjuster, who has decision-making authority on behalf of the defendant. (Doc. 15 ¶¶ 2,3).

Counsel for the plaintiffs sent a settlement demand letter to the defendant on October 10, 2017. (*Id.* ¶ 4). In response to the demand letter, on November 17, 2017, defense counsel sent a letter of representation to plaintiffs' counsel. (*Id.* ¶ 5). The letter of representation indicates that following the receipt of the demand letter, Ms. Everline responded to plaintiffs' counsel in writing and again by voice message[1] and emails of November 10, 2016, and November 16, 2016. (Doc. 15-2).

Thereafter, the motion alleges that on February 28, 2018, Ms. Everline inadvertently sent an email to plaintiffs' counsel rather than to defense counsel, the purported intended recipient. (Doc. 15 ¶ 6). On June 6, 2019, we directed defense counsel to provide the court with the email

---

[1] The letter of representation does not specify the date of Ms. Everline's written response nor does it set forth the date of her voice message.

exchange for an *in camera* review which we have conducted. After the receipt of the alleged inadvertently sent email, the motion alleges that plaintiffs' counsel had a direct exchange of further communications in the form of emails with Ms. Everline regarding the substance and merits of the plaintiffs' claims. (*Id.* ¶ 10). Without disclosing the specific details of the exchanges, the motion avers in conclusory form that "plaintiffs' counsel elicited information from Ms. Everline that is prejudicial to the defendant, proprietary in nature, and protected by the attorney-client privilege." (*Id.* ¶ 11). The defendant maintains that its counsel was not present during these communications, he was not copied on any of them, he did not give permission to plaintiffs' counsel to engage in a direct communication with Ms. Everline, and he was not informed by plaintiffs' counsel of her direct communications with Ms. Everline. (*Id.* ¶¶12-14). The email can also be interpreted as being sent to defense counsel and asking rhetorically whether "you (in general) have a burden to prove your (in general) damages." Nevertheless, whether Ms. Everline's email was intentionally or inadvertently sent to plaintiffs' counsel is not dispositive of the issues before us.

It is undisputed that on February 28, 2018, plaintiffs' counsel knew

that the defendant was represented by counsel.² Other than responding to Ms. Everline that "I am guessing this email was for Josh," the more prudent action would have been to end the communication at that statement and forward Ms. Everline's email to defendant's counsel.

The parties dispute whether there was anything confidential in the email exchange. For the most part, the statements made were generally expressions of the parties' respective positions on damages. In addition, Ms. Everline also asked for certain records for her continued review of the claim.

On March 2, 2018, two days after the alleged inadvertent email was sent, defense counsel corresponded with plaintiffs' counsel and notified her that the February 28, 2018 email from the defendant was "inadvertently sent" to her. (Doc. 15-3). Further, in the letter, defense counsel asserted that plaintiffs' counsel "correctly noted" in her response to the email that the defendant's email "was privileged and not intended

---

² Our *in camera* review of the email exchange determined that on February 28, 2018, at 10:29 a.m. (before the subject exchange) plaintiffs' counsel emailed defense counsel. We were not provided with the contents of that email and we note that defense counsel crossed-out the transmission data including "From," "Sent," "To," "Cc," and "Subject." Nevertheless, we have been able to determine those entries despite the cross-outs.

for" her. (*Id.*). We have made an *in camera* review of the subject email exchange and we have determined that it is unclear whether the email of February 28, 2018, sent by Ms. Everline to plaintiffs' counsel was, in fact, inadvertent as the defendant maintains. There is no doubt that Ms. Everline sent the email to plaintiffs' counsel at 12:50 p.m. on that date and that plaintiffs' counsel was the recipient of it. The email begins with the words "Thanks Josh," but Ms. Everline states that "I still believe you have a burden to prove your damages." It is beyond dispute that the defendant would not be expected to prove damages. The email concludes with an inquiry if "we have those records" relating to "Cullen's" treatment. Defense counsel was not listed as a recipient of the email nor was he listed as receiving a copy ("cc") of it.

A review of the email response by plaintiffs' counsel at 3:11 p.m. on the same date begins with the statement "I am guessing this email was for Josh." The email does not acknowledge that the email was "privileged and not intended for [her]" as maintained by defense counsel. The remainder of the email describes Cullen's emotional injuries and reasons why presumptive medications are not beneficial for him. Finally, plaintiffs' counsel concludes the email communication by informing Ms.

5

Everline that plaintiffs' counsel is ethically obligated to share Ms. Everline's email with her clients. Ms. Everline responded at 3:43 p.m. by referencing her self-proclaimed thorough and prompt review of all relevant records and her request for additional records for her review. Ms. Everline never stated that her initial email was inadvertently sent to plaintiffs' counsel. The email from Ms. Everline to plaintiffs' counsel does not show that she copied defense counsel.

In response to this email, plaintiffs' counsel stated in an email at 4:03 p.m. that she previously provided Ms. Everline with Cullen's records and that she will provide her with Arlene's records upon her receipt of them. Ms. Everline promptly responded at 4:10 p.m. expressing her dilemma in making Cullen whole without treatment despite his alleged life-altering anxiety. No reference of an inadvertent email was made by Ms. Everline nor does the email reflect that she copied defense counsel. It appears that Ms. Everline shared the entirety of the foregoing email exchange the following day with defense counsel which presumably resulted in his letter of March 2, 2018, directed to plaintiffs' counsel. We find that the thrust of this email exchange centered around the interpretation of the "tone" of the original email from Ms. Everline which

resulted in a difference of opinion regarding it.

We also find it significant that in his letter of March 2, 2018, to plaintiffs' counsel, defense counsel did <u>not</u> request that the alleged inadvertent email be destroyed and not used or disseminated to anyone in connection with the case. Rather, it was not until approximately one year later on February 19, 2019, when defense counsel corresponded with plaintiffs' counsel requesting confirmation that she "immediately destroy any and all versions, copies, or other stored facsimiles of this email," and that it not be "disseminated to any of your witnesses, experts, or any other third parties." (Doc. 15-4).

## II. *Discussion*

We now address whether the facts show that plaintiff's counsel violated Rule 4.2 of the Pennsylvania Rules of Professional Conduct as suggested by the defendant. Rule 4.2, which has been adopted by this court under Local Rule 83.23.2, is set out as follows:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

7

Pa. R. Prof'l Conduct 4.2.[3]  The rule "applies to communications with any person who is represented by counsel concerning the matter to which the communication relates." *Id.* cmt. 2.  Further, the Rule applies "even though the represented person initiates or consents to the communication."  *Id.* cmt. 3.  Once the lawyer learns that the person is one with whom communication is not permitted, the lawyer must immediately terminate the communication.  *Id.*

Although we do not look lightly upon the conduct of plaintiffs' counsel, on the basis of the record before us, there is insufficient evidence to conclude that a violation of the rule occurred.  Moreover, the content of the email exchange does not convince us that plaintiffs' counsel intentionally sought to create an unfair advantage.  Also, we find that the conduct of plaintiffs' counsel does not raise a substantial question as to her honesty, trustworthiness, or fitness as a lawyer in other respects.  In addition, it is evident that defense counsel was not overly troubled by the exchange in that he waited almost one year from its occurrence to

---

[3] Local Rule 83.23.2 provides, in relevant part, that the Middle District of Pennsylvania has adopted:  "(1) the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania . . . ; (2) the Code of Professional Conduct enacted in the Middle District of Pennsylvania's Civil Justice Reform Act Plan." L.R. 83.23.2.

8

request that plaintiffs' counsel refrain from disseminating it to anyone, including plaintiffs' expert witness. Nevertheless, we are satisfied that the circumstances warrant some remedial measure as it would be inequitable to permit the plaintiffs to utilize information obtained from an arguably improper manner. Therefore, we will preclude the plaintiffs from introducing any information obtained through the subject email exchange involving Ms. Everline where her statements could bind the defendant. We conclude that this is an appropriate remedial measure based upon the record before us.

The court will deny the defendant's request for fees and costs associated with this motion. Federal courts have awarded such fees for violations of Rule 4.2. *See Penda Corp. v. STK, LLC*, No. Civ. A. 03-5578 2004 WL 1628907 *7 (E.D. Pa. July 16, 2004); *see also Faison v. Thornton*, 863 F. Supp. 1204, 1218 (D. Nev. 1993). The cases awarding fees, however, involve egregious, willful, or bad-faith violations of the rule. *See, e.g., Hill v. St. Louis Univ.*, 123 F.3d 1114, 1117 (8th Cir. 1997) (plaintiffs' counsel interviewed and obtained an affidavit from a chairperson of the defendant University despite having been warned in writing by opposing counsel that such contact would violate Rule 4.2).

9

Here, plaintiffs' counsel responded twice in the same day to Ms. Everline's emails and at no other time. The communications were very limited in scope and do not rise to the level of egregiousness warranting the imposition of counsel fees.

An appropriate order follows.

*s/Joseph F. Saporito, Jr.*<br>**JOSEPH F. SAPORITO, JR.**<br>**United States Magistrate Judge**

**Dated: July 17, 2019**